UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEQUON BALLARD,<br><br>                    Petitioner,<br><br>         v.<br><br>J. WOODFORD, et.al.,<br><br>                    Respondents. | CV F   05-00570 AWI DLB HC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>[Doc. ] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

BACKGROUND

Petitioner is a state prisoner who is in the custody of the California Department of Corrections and Rehabilitation (CDCR). Petitioner was convicted on February 27, 2004, of violating California Penal Code section 4501.1(a), aggravated battery - gassing of a peace officer. (Exhibit A, Abstract of Judgment.)

Petitioner filed the instant petition for writ of habeas corpus on April 28, 2005. In his petition, Petitioner contends that he was denied his due process rights under the Fourteenth Amendment in connection with a prison disciplinary action in which he was found guilty of spitting upon a correctional officer on June 1, 2004. (Exhibit B, Disciplinary Record for Incident of June 1, 2004.)

1

1  Respondent filed an answer to the petition on August 26, 2005. (Court Doc. 7.)
2  Petitioner did not file a traverse.

3  DISCUSSION

4  I.   Jurisdiction

5  Relief by way of a petition for writ of habeas corpus extends to a person in custody
6  pursuant to a judgment of a state court if the custody is in violation of the Constitution or laws or
7  treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,
8  529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed
9  by the U.S. Constitution. Petitioner's claims for relief arise out of a disciplinary hearing at Wasco
10 State Prison, California, which is located within the jurisdiction of this Court. 28 U.S.C.
11 §§ 2254(a), 2241(d). If a constitutional violation has resulted in the loss of time credits, such
12 violation affects the duration of a sentence, and the violation may be remedied by way of a
13 petition for writ of habeas corpus. Young v. Kenny, 907 F.2d 874, 876-78 (9th Cir. 1990).

14 II.   Standard of Review

15 This Court may entertain a petition for writ of habeas corpus "in behalf of a person in
16 custody pursuant to the judgment of a State court only on the ground that he is in custody in
17 violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

18 The AEDPA altered the standard of review that a federal habeas court must apply with
19 respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.
20 Taylor, 529 U.S. 362 (2000). Under the AEDPA, an application for writ of habeas corpus will
21 not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or
22 involved an unreasonable application of, clearly established Federal law, as determined by the
23 Supreme Court of the United States;" or "resulted in a decision that was based on an
24 unreasonable determination of the facts in light of the evidence presented in the State Court
25 proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 123 S.Ct. 1166 (2003), *disapproving the*
26 *Ninth Circuit's approach in* Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000); Williams, 529
27 U.S. 362. "A federal habeas court may not issue the writ simply because that court concludes in
28 its independent judgment that the relevant state court decision applied clearly established federal

1 law erroneously or incorrectly." Lockyer, 123 S.Ct. at 1175 (citations omitted). "Rather, that

2 application must be objectively unreasonable." Id. (citations omitted).

3     While habeas corpus relief is an important instrument to assure that individuals are

4 constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887 (1983); Harris v. Nelson, 394

5 U.S. 286, 290 (1969), direct review of a criminal conviction is the primary method for a

6 petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633 (1993). In

7 addition, the state court's factual determinations must be presumed correct, and the federal court

8 must accept all factual findings made by the state court unless the petitioner can rebut "the

9 presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v.

10 Elem, 514 U.S. 765 (1995); Thompson v. Keohane, 516 U.S. 99 (1995); Langford v. Day, 110

11 F.3d 1380, 1388 (9th Cir. 1997).

12 III.    Review of Petitioner's Claims

13     Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be

14 diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell,

15 418 U.S. 539, 555 (1974).  Prison disciplinary proceedings are not part of a criminal prosecution,

16 so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556.  Thus, a

17 prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison.

18 Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), *citing* Superintendent, etc. v. Hill, 472

19 U.S. 445, 454-455 (1984).

20     However, when a prison disciplinary proceeding may result in the loss of good time

21 credits, due process requires that the prisoner receive: (1) "Written notice of the charges must be

22 given to the disciplinary-action defendant in order to inform him of the charges and to enable him

23 to marshal the facts and prepare a defense"; (2) "at least a brief period of time after the notice, no

24 less than 24 hours, should be allowed to the inmate to prepare for the appearance before the

25 disciplinary committee"; (3) "there must be a written statement by the factfinders as to the

26 evidence relied on and reasons for the disciplinary action"; (4) "the inmate facing disciplinary

27 proceedings should be allowed to call witnesses and present documentary evidence in his defense

28 when permitting him to do so will not be unduly hazardous to institutional safety or correctional

goals"; and (5) "where an illiterate inmate is involved . . . or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." Wolff, 418 U.S. at 564, 566, 570.

On June 1, 2004, Petitioner was placed in administrative segregation for spitting upon a correctional officer earlier that same day. (Exhibit B, at pp. 2-4.) Petitioner was formally charged the following day. (Id. at 1.) Officer Pierce indicated that Petitioner spat on him while he was being placed in a holding cell. (Id.) The incident was witnessed by a Medical Technical Assistant. (Id.) It was noted that Petitioner is a participant in the Mental Health Delivery System, however, Petitioner's behavior did not appear psychotic, bizarre or uncharacteristic in any way. (Id.)

On June 12, 2004, Correctional Officer Loftis was assigned to Petitioner as a staff assistant. (Id. at 3.) On June 16, 2004, Correctional Officer Bonilla was assigned to Petitioner as an investigative employee. (Id.) At the hearing on July 1, 2004, Petitioner acknowledged that he had received all documents concerning the formal charge in a timely fashion. (Id. at 2.)

After the charges were read to Petitioner, he pled not guilty and did not request any witnesses. (Id.) Petitioner admitted to spitting on Officer Pierce. Specifically, Petitioner stated, "I couldn't spit on the one who actually put me in the cage, so I just spit on the one that was there. I only spit once, so I don't see how it could hit him in all those places." (Id.) Petitioner claimed that it was not his fault because he was not on his medications that day and he could not control himself. (Id.) The hearing officer disagreed and found Petitioner guilty. (Id.) Petitioner was assessed 150 days of forfeiture of good credit time. (Id.) The matter was also referred to the District Attorney for potential prosecution of criminal charges. (Id.) Respondent points out that the record appears silent as to whether Petitioner was advised of his right to administratively appeal the hearing officer's findings. (See Exhibit B.)

As Respondent correctly argues, the disciplinary charges against Petitioner are supported by "some evidence" and must therefore be upheld. Petitioner unequivocally admitted to spitting

1  on the officer.  (Exhibit B, at 2.)  Further, the record supports the finding that Petitioner was
2  afforded all of the due process rights that are constitutionally required.  Petitioner received the
3  assistance of a staff assistant and investigator. (Id.)  He acknowledged that he received
4  notification of the disciplinary hearing.  (Id.)  He did not request to call any witnesses, and
5  therefore no witnesses were presented.  (Id.)  Petitioner's claim that he was denied the right to
6  call witnesses is nothing more than a conclusory allegation devoid of factual support. See Jones
7  v. Gomez, 66 F.3d 199, 204-05 (9th Cir.1995) (holding that conclusory allegations made with no
8  reference to the record or any document do not merit habeas relief).  Lastly, the record states that
9  Petitioner was given a complete copy of the report on June 19, 2004, and no claim to the contrary
10 is presented.  (Id. at 3.)  Therefore, all of the due process requirements of Wolff have been met.
11 Although Respondent submits that the record is not clear whether Petitioner was advised of his
12 right to appeal the findings, the rules violation report does state "Inmate BALLARD was advised
13 of his right to appeal the findings of this hearing." (Id. at 2.)  However, regardless of whether
14 Petitioner was adequately advised of his right to administratively appeal, this advisement is not
15 one of the enumerated rights set forth in Wolff, and no due process violation could have
16 occurred.  See Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1993), *abrogated on other*
17 *grounds in* Sandin v. Connor, 515 U.S. 472 (1995) (Federal due process does not require that a
18 prison comply with its own procedures which are more onerous than those required by the
19 Constitution.)  A prisoner's right to due process is violated "only if he was not provided with
20 process to meet the *Wolff* standard."  Walker, 14 F.3d at 1419-20.

21      In sum, all due process requirements were satisfied and the guilty finding was supported
22 by "some evidence." Accordingly, Petitioner's claims are without merit and the petition should
23 be denied.

### RECOMMENDATION

25      Based on the foregoing, it is HEREBY RECOMMENDED that:
26      1.  The petition for writ of habeas corpus be DENIED; and
27      2.  The Clerk of Court be directed to enter judgment in favor of Respondent.
28      This Findings and Recommendations is submitted to the assigned United States District

1 Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of
2 the Local Rules of Practice for the United States District Court, Eastern District of California.
3 Within thirty (30) days after being served with a copy, any party may file written objections with
4 the court and serve a copy on all parties.  Such a document should be captioned "Objections to
5 Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served
6 and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the
7 objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
8 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time
9 may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th
10 Cir. 1991).

12    IT IS SO ORDERED.

13    **Dated:    October 25, 2006**              **/s/ Dennis L. Beck**
    3b142a                        UNITED STATES MAGISTRATE JUDGE